Cook, J.
Laugabough, Morton and Hardwick leased from Mary Scott, a small parcel of land in the village of Scio, Harrison county, being one half of an ordinary sized village lot, for the purpose .of putting down an oil well, Mrs. Scott to receive one-eighth of the oil obtained, as royalty.
. Scio is a populous village,' the houses being built quite closely *179 together and principally frame buildings. A well was drilled upon the half lot, oil was procured, and a large amount stored in two tanks upon the premises. An elevated tank from some cause toppled over and the oil ran down to a small run or creek close by; the oil took fire and the dwelling house and out buildings of defendant in error, Anderson, situated on the adjoining half lot, were destroyed.
Uuder these circumstances the court charged the jury that the main question for them to' determine was: Is crude oil stored in tanks a highly explosive and dangerous substance and a constant menance to property in its vicinity and, if so,, was the storing of such oil the proximate cause of the burning of plaintiff’s property; and if they should determine these two questions in favor of the plaintiff, then they should return a verdict for him.
The jury found for plaintiff. Upon the hearing before us two questions were made: First, that the verdict is against the evidence; and secondly, that the court erred in its charge to the jury.
We think the evidence is sufficient to sustain the verdict. It clearly shows that petroleum or crude oil is a highly inflammable and dangerous substan'ce and a constant menance to property in its vicinity. True the evidence did not show that crude oil ordinarily was highly explosive, but from our view of the case it was not necessary to submit that question to the jury, and plaintiffs in error were in no way prejudiced thereby.
The criticism made by counsel for plaintiffs in error upon the charge to the court is that it wholly eliminates the question of negligence; and counsel insists that the storers can be held responsible only when the oil escapes through their negligence.
This case presents the question whether a person wlm brings upon his premises a highly inflammable and dangerous, substance which is a constant mena»ee to the property of others, is required at his own peril to do so keep it that it will nd^. escape and injure his neighbor; and, if it does escape and injure his neighbor, is he responsible although he may have used proper care and diligence to pervent such escape and injury. These questions, both upon authority and principle, we answer in the affirmative.
*180 In the case of Tiffin v. McCormack, 34 Ohio St., 644, Judge Mcllvaine uses this language:
, “As between the owners _ of adjacent lands, the maxim of the common law, sic utere tuo ut alienum non laedas, applies with special forcé; not because it forbids the exercise of the right of dominion or control of property, according to the pleasure of the owner, in one case more than in another, whether it be real or personal property, or whether it be owned for general or special purposes, but because the right to use or control it, ac¿ording to the pleasure of the owner, is limited under some circumstances more than under others. Undoubtedly, the right to use property as the owner may please, provided-that reasonable care is taken not to do unnecessary injury to others, is the ordinary rule. But this rule can not be interposed to justify the committing of a trespass or the maintaining of a nuisance. A man who digs a pit on his own land, whereby the soil of an adjoining proprietor is disturbed on account of the lbss of lateral support, cannot justify his act on the ground that Ire used reasonable care to prevent the injury. Neither can one in the possession of a parcel of land operate and manage a mine or quarry upon it in such manner as to injure or destroy the property of an adjoining proprietor, and justify himself by showing that he used ordinary care in the use of his own property. In such cases, the right to use is subject to the limitation-that its use will not injure his neighbor. The true doctrine' fipon this subject is well stated in the case of Hay v. The Cahoes Co., 2 Comstock (N. Y.), 159, as follows: “The use of land by the proprietor is not therefore an absolute right, but qualified and limited by the higher right of others to the lawful possession of their property. To this possession the law prohibits all direct-injury, without regard to its extent or the motives of the aggressor. A man may prosecute such business as h-e-'chooses upon his premises, but cannot erect a nuisance to the annoyance of the adjoining' proprietor, even for the purpose of lawful trade. 9 Coke, 58. He may excavate a canal, but he can not cast the dirt or stones upon the land of his neighbor, Either by human agency or the force of gunpowder. If he can not construct the work without the adoption of such means, he must abandon that mode of using his propérty or be held responsible for all damages resulting therefrom. He will *181 not be permitted to accomplish a legal object in an unlawful ■manner. And in Tremain v. The Cahoes Co., Ib. 163, it was held, that, in such case, evidence to show that the work was done in the most careful manner is inadmissible where there is np clainU made for exemplary damages.”
This case it seems to us is analagous to the case under con-' sideration, and the principles there set forth, of themselves, would be decisive of the propostion involved.
In the case of The Defiance Water Company v. Olinger, 54 Ohio St., 532, it is held:
“1. One who collects on his own premises a substance liable to escape, and, if it should escape, likely to cause mischief, must, at least, use reasonable care to restrain it. If for want of such care it escapes and injures persons or property rightfully on adjoining premises, he is answerable for the damages sustained on account thereof.”
In this case, Bradbury, Justice; endorses directly the principle laid down' in Fletcher v. Rylands, 1 Exch. Law Rep., 265, and more than intimates that he party would be liable, independent of the question of negligence; but it being a demurrer to' the petition and the petition having averred negligence, it' - was not necessary to pass upon the question as to whether a-party would be ■ responsible whether there was negligence or not.
• In the case of Bradford Glycerine Company v. The St: Marys Woolen ' Manufacturing Company, 60 Ohio St., 360, it is held: ■ .:
“Nitroglycerine is a substance usually recognized as. highly ’ explosive and -dangerous, .the storage of which at any place is a constant- menace to the property in that vicinity. And one who stores it on his own premises is liable'for injuries^ caused to .surrounding.'property by its exploding, although he neither' violates any provision of the law regulating its. storage, -nor is; - chargeable with negligence contributing to the explosion.”
“2. A right of action will exist in favor of all'property with-i-: in-the circle of danger, and the fact that the property injured was. not on premises adjacent to those on which the explosive^ substance was stored, will not defeat a recovery.” . .
.'iWliile. crude, oil differs from nitroglycerine to a certain- extent, it is of a like dangerous character. It is not so explosive, *182 but it is highly inflammable and when large quantities of it take fire, it is equally destructive to property in its vicinity.
In Bradford Glycerine Company v. The St. Marys Woolen Manufacturing Company, supra, Fletcher v. Rylands is approved. Bradbury, C. J., makes the following quotations from that case, as furnishing the correct principle applicable to cases of this character:
“We think that the true rule of law is, that the person who for his own purpose brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff’s default; or perhaps that the escape was the consequence of vis major, or the act of God; but as nothing of this sort exists here, it is unnecessary to inquire what excuse would be sufficient. The general rule, as above stated, seems on principle just. The person whose grass or corn is eaten down by the escaping cattle of his neighbor or whose mine is flooded by water from his neighbor’s reservoir, or whose cellar is invaded by the filth of his neihbor’s privy, or .whose habitation is made unhealthy by the fumes and noisome vapors of his neighbor’s alkali works, is damnified without any fault of his own; and it seems but reasonable and just that the neighbor, who has brought something on his own property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if he gets on his neighbor’s, should be obliged to m'ake good he damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority, this we think is established to be the law whether the things so brought be beasts, or water, or filth, or stenches.”
This language was approved in the House of Lords when the cause came up for consideration there, Lord Cranworth saymg: '
‘ My Lords, I concur with my noble and learned friend in *183 thinking that the rule of law was correctly stated by Mr. Justice Blackburn in delivering the opinion of the Exchange-Chamber.' If a person brings, or accumulates, on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape, and cause damage, he is responsible, however careful he may have been,, and whatever precautions he may have taken to prevent the damage.”
Bow, Harrison & Aston and Pearce & Lemmon, for Plaintiffs.
D. A Hollingsworth, for Defendant.
One other question is made. Counsel for Mary Scott claim that whatever may be the liability of the lessees, she is not responsible. As she leased the premises for the express purpose of drilling for and storing oil and was the owner of one-eighth of the oil, it necessarily follows that she occupies the same relation to the injury as the lessees, and is equally liable..
It seems to us, therefore, to be clearly settled in this state that one who brings or stores upon his own premises in large-quantities, a substance like crude oil, which is highly inflammable and dangerous and a menace to his neighbor’s property,, must keep the same upon his own premises at his peril, independent of all question of negligence.
We therefore find that there was no error in the charge of the court and the judgment will be affirmed.